UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**IN RE HENDRIKUS EDWARD TON**

CIVIL ACTION

NO: 19-13889

SECTION: "H"

## ORDER AND REASONS

Before the Court is an Appeal and Cross-Appeal of a judgment of the bankruptcy court (Docs. 13, 17). Finding that the bankruptcy court made errors of both law and fact, its judgment is VACATED, and this matter is REMANDED.

## BACKGROUND

This matter comes before this Court as an appeal of an August 14, 2019 judgment of the bankruptcy court partitioning the former community property of the parties. Hendrikus ("Hank") Edward Ton and Lynda Ton were married in 1987, and Lynda Ton filed for divorce on November 14, 2012 in Louisiana's 25th Judicial District Court. A judgment of divorce was later issued,

1

terminating the community property regime retroactive to that date. During the marriage, the Tons owned and operated several businesses, the most profitable of which was Abe's Boat Rentals, Inc. ("Abe's").

On October 5, 2012, Hank Ton pleaded guilty to conspiracy to defraud the United States by failing to collect, account for, and pay over employment taxes in violation of 18 U.S.C. § 371 and willful failure to collect, account for, and pay over employment taxes in violation of 25 U.S.C. § 7202. In pleading guilty, Hank Ton admitted that he was the responsible person obligated to collect and pay over withheld taxes to the IRS on behalf of Abe's and that he had underreported withheld taxes for Abe's employees between the years of 2006 and 2009. Hank Ton agreed to repay the amount of $3,582,451.00 in restitution to the IRS (the "Tax Liability").

On May 29, 2013, Hank Ton refinanced an existing line of credit with Hancock Whitney Bank to satisfy the Tax Liability. He personally guaranteed the $3,222,451.00 loan and used the proceeds to pay the restitution owed to the IRS. Mr. Ton also liquidated a community life insurance policy and invested the proceeds into Abe's to cover its operating costs.

On April 27, 2018, Hank Ton filed a voluntary petition under Chapter 11 bankruptcy in the Eastern District of Louisiana. On October 8, 2018, Lynda Ton removed the community property partition petition to this Court, and it was referred to the bankruptcy court.

The bankruptcy court's judgment partitioning community property awarded Lynda Ton all of the community property, except for the businesses, including Abe's, and property located in Magnolia, Mississippi. It also held that

Hank Ton owed Lynda Ton an equalizing cash payment in the amount of $460,229.62.

Hank Ton appeals the bankruptcy court's judgment to this Court, arguing that it is contrary to law. Specifically, he argues that the bankruptcy court erred in (1) classifying the Tax Liability as a separate obligation, (2) requiring Hank Ton to reimburse Lynda Ton for the life insurance proceeds, and (3) miscalculating damages and adjustments to the community.

Lynda Ton opposes the appeal and brings a cross-appeal, arguing that there was an additional ground upon which the bankruptcy court could have reached its conclusion—judicial estoppel.

## LEGAL STANDARD

Where a district court sits as an appellate court in a bankruptcy case, "[t]he bankruptcy court's findings of fact are reviewed under a clear error standard, while conclusions of law are reviewed de novo."[1]

## LAW AND ANALYSIS

### A. Classification of Tax Liability

First, Hank Ton argues that the bankruptcy court erred by classifying the Tax Liability as a separate obligation. Hank Ton's tax fraud scheme resulted in $3,582,451.00 in employment tax loss to the federal government for the years 2006 through 2009.[2] In pleading guilty to his crimes, Hank Ton

---

[1] In re Amco Ins., 444 F.3d 690, 694 (5th Cir. 2006).
[2] Doc. 16-1 at 13.

3

agreed to pay that same amount in restitution.[3] The parties dispute whether this obligation is separate or community.

Under Louisiana law, "all obligations incurred by a spouse during the existence of a community property regime are presumed to be community obligations."[4] It is undisputed that the Tax Liability was incurred during the marriage, and the obligation is therefore presumed to be community. Accordingly, Lynda Ton bears the burden to overcome the presumption and prove that it is a separate obligation.[5]

Under Louisiana Civil Code article 2363, "[a]n obligation resulting from an intentional wrong or an obligation incurred for the separate property of a spouse is likewise a separate obligation to the extent that it does not benefit both spouses, the family, or the other spouse." Lynda Ton argues—and the bankruptcy court agreed—that because Hank Ton committed criminal tax fraud, the obligation is separate. Lynda Ton points to no evidence in the record, however, showing that Hank Ton's fraud did not benefit her.[6] As Hank Ton points out, the amounts that should have been paid to the IRS as payroll taxes were instead used to support the community business or the couple's lifestyle. "Generally, the less tax owed or paid, the more community funds are available

---

[3] Doc. 16-1 at 38.

[4] LA. CIV. CODE art. 2361.

[5] Sims v. Sims, 677 So. 2d 663, 665 (La. App. 2 Cir. 1996) ("[O]nce the husband established that the debt had been incurred during the community regime, he benefited from the Article 2361 presumption without any necessity to present further evidence. It then became incumbent upon Janice to show, under La.C.C. Art. 2363, that her former spouse committed an 'intentional wrong' not for the benefit of the community.").

[6] In her brief, Lynda Ton made the following conclusory statements without support: "Hank Ton's criminal FICA tax fraud was an 'intentional wrong' that did not benefit both spouses. To the contrary, it harmed Lynda Ton. Only Hank Ton received the money from his fraud, money for which he has never accounted for." Doc. 16.

for use by the community."[7] Accordingly, it seems clear that Lynda Ton benefitted from her husband's underpayment of taxes. More importantly, however, nothing in the record shows that she did not, and the presumption that the Tax Liability is a community obligation has not been rebutted.

Further, the loan that Hank Ton obtained after the termination of the community regime to pay the Tax Liability does not alter the classification of this obligation. The bankruptcy court erroneously held that: "While the liability for these taxes was incurred during the existence of the community, it was not owed under the Whitney guaranty until after the Termination. As a result, it too is separate." In fact, the Tax Liability was both incurred and owed during the marriage. Even so, Louisiana law is clear that obligations are classified at the time that they are incurred.[8] The fact that a loan was later secured to satisfy the obligation is of no consequence. Accordingly, the bankruptcy court erred in holding that the Tax Liability was a separate obligation.

Lynda Ton argues that the bankruptcy court could have based its holding that the Tax Liability was a separate obligation on the doctrine of judicial estoppel. Specifically, she argues that Hank Ton should be judicially estopped from claiming that the Tax Liability is a community obligation when he admitted to being the "responsible person" for the tax fraud. In so arguing, she relies on the Louisiana Supreme Court's decision in *Webb v. Webb*.

---

[7] Franz v. Franz, 729 So. 2d 724, 725 (La. App. 1 Cir. 1999).
[8] LA. CIV. CODE art. 2361.

In the partition proceeding in *Webb*, Mr. Webb sought to classify a loan secured by a mortgage on the family home as a community obligation.[9] Hank Webb, a licensed attorney, had taken out the loan during the marriage.[10] He had previously admitted, however, that he had "caused a forged signature for Mrs. Webb to be placed on the loan documents and that he concealed the existence of the loan and the mortgage on the family home from Mrs. Webb."[11] As a result of the forgery, formal attorney disciplinary charges were brought against him, and he admitted his misconduct to the Louisiana Supreme Court.[12] He also represented to the court that he was taking "sole financial responsibility" and "full responsibility" for the loan.[13] The Louisiana Supreme Court held that the doctrine of judicial estoppel prevented Mr. Webb from arguing that the fraudulent loan should be characterized as a community obligation in the partition proceeding where he had represented to the court "in his disciplinary case that Mrs. Webb would suffer no financial harm" from the fraudulent loan.[14]

For the doctrine of judicial estoppel to apply, "(1) the party's position must be clearly inconsistent with a previous one, (2) the court must have accepted the previous position, and (3) the non-disclosure of an asset must not have been inadvertent."[15] Here, unlike in *Webb*, Hank Ton's positions are not

---

[9] Webb v. Webb, 263 So. 3d 321, 324 (La. 2018).
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.* at 328.

inconsistent. In pleading guilty to the criminal tax fraud charges against him, Hank Ton admitted that he was a "responsible party" with respect to the Tax Liability of the community businesses—"that is, he had the corporate responsibility to collect, truthfully account for, and pay over to the IRS the withheld taxes and employer portion of FICA taxes on behalf" of the community businesses.[16] Such an admission is not contrary to his position here that the Tax Liability should be classified as a community obligation. Hank Ton did not, as in *Webb*, take the position that he was solely *financially* responsible for the Tax Liability or that Lynda Ton would suffer no financial harm. Hank Ton's position in the criminal proceeding was that he was responsible for Abe's obligations to collect and pay taxes—not that he was solely responsible for their payment vis-à-vis Lynda Ton. Accordingly, *Webb* is easily distinguishable, and the doctrine of judicial estoppel is inapplicable here.

### B. Tax Liability Damage to Community

Relatedly, Hank Ton argues that the bankruptcy court erred in holding that the Tax Liability damaged the community in the amount of $1,611,225.50. Pursuant to Civil Code article 2369.3, a spouse is answerable for any "damage caused by his fault, default, or neglect" to the community property under his control. As part of his tax fraud scheme, Hank Ton underreported employee wages and therefore failed to pay either withheld employee income taxes or employer payroll taxes on the unreported wages. The bankruptcy court held that half of the Tax Liability constitutes the employees' share of taxes that

---

[16] Doc. 16-1.

should have been collected from employee wages. It held that because Abe's would not have been liable for this amount but for Hank Ton's criminal tax fraud, Lynda Ton is owed damages in that amount.

Hank Ton appeals this holding, arguing that the record does not support a finding that half of the Tax Liability represented amounts that Abe's was not already obligated to pay. Stated differently, he argues that there is no evidence that the full amount of the Tax Liability would not have been owed regardless of any wrongdoing by Hank Ton. This Court agrees. Lynda Ton has not identified, and this Court could not locate, anything in the record that indicates what—if any—portion of the restitution owed by Hank Ton was over and above the amount Abe's would have owed if it had properly and timely paid its employee and employer taxes. The factual basis to which Hank Ton admitted in conjunction with his guilty plea does not differentiate between the type of taxes owed by Abe's and merely states that "[i]n total, the scheme resulted in an employment tax loss to the federal government of $3,582,451.92."[17]

The Court assumes that the bankruptcy court based its 50% calculation on the factual basis's statement that Abe's owed income taxes withheld from employee wages and "the matching employer's portion" of taxes based on those wages.[18] Although perhaps a reasonable assumption, a statement of Abe's obligations under federal tax law does not support a factual finding that it would not have been liable for 50% of the Tax Liability without Hank Ton's wrongdoing. Further, even assuming that there was support in the record for this finding, the court's calculation that 50% of the Tax Liability is

---

[17] Doc. 16-1.
[18] *Id.*

8

$1,611,225.50 was erroneous. The Tax Liability was $3,582,451.00, and 50% is therefore $1,791,225.50. The court improperly based its calculation on the amount of the loan that Hank Ton secured to partially satisfy the Tax Liability. Accordingly, the bankruptcy court's factual finding that Abe's would not have been liable for $1,611,225.50 in taxes but for Hank Ton's criminal tax fraud was clear error. The damages imposed against Hank Ton are not supported by the record.[19]

### C. Real Subrogation

Next, Hank Ton argues that the bankruptcy court erred in holding that he owed Lynda Ton reimbursement for the post-termination conversion of a life insurance policy and the use of its proceeds to fund Abe's business operations. Hank Ton contends that under the doctrine of real subrogation, the conversion of a community life insurance policy into proceeds and the use of those proceeds to fund a community business "merely shifted community property from one location and use to another." He argues that he surrendered the policy and used its proceeds for Abe's operations to fulfill his duty to prudently manage the former community property pursuant to Louisiana Civil Code article 2369.3. He used the proceeds to pay property taxes, repair costs, and insurance for Abe's vessels. Therefore, he argues, the community did not suffer a loss and no reimbursement was warranted.

Louisiana Civil Code article 2369.3 states:

A spouse has a duty to preserve and to manage prudently former community property under his control in a manner consistent with

---

[19] Having found that there was no factual basis for the damages assessed against Hank Ton, this Court need not consider his additional argument regarding the court's alleged error in its adjustment analysis.

9

> the mode of use of that property immediately prior to termination of the community regime. He is answerable for any damage caused by his fault, default, or neglect.

In reaching its decision, the bankruptcy court curiously relied on an outdated version of the article that included the phrase "including a former community enterprise" in describing the "former community property" to which the duty applies. "A community enterprise is a business that is not a juridical person."[20] This phrase was removed from the article in 2017. However, the revision notes advise that "[t]he deletion of the reference to a community enterprise . . . does not change the law. That reference was both redundant and unnecessary. The duty to preserve applies to all community assets, regardless of their form."[21]

In relying on the outdated article, the bankruptcy court held that because Abe's is a juridical person, it is not a community enterprise and therefore the article 2369.3 duty does not apply to its management. Hank Ton argues that this holding is contrary to law and that the revision notes make clear that the article 2369.3 duty applies to "all community assets, regardless of their form."[22] Indeed, Louisiana courts have held that the article 2369.3 duty applies to the management of former community juridical persons. In *Granger v. Granger*, the Louisiana Third Circuit Court of Appeal held that a husband violated his duty under article 2369.3 when he allowed a closely held community corporation to fail in the interim period between the petition for divorce and the final divorce decree.[23] In *Ellington v. Ellington*, the Louisiana

---

[20] LA. CIV. CODE art. 2350.
[21] LA. CIV. CODE art. 2369.3 cmt. (a).
[22] *Id.*
[23] 967 So. 2d 540, 544 (La. App. 3 Cir. 2007); *see also* Duffy v. Millet, 2018 WL 5305095, at *4 (La. App. 5 Cir. 2018) ("To the extent Richard may be mismanaging [the community's

Second Circuit Court of Appeal held that the cashing in and use of a $500,000 certificate of deposit to reduce the debt of a community corporation was not a violation of the article 2369.3 duty where it did not rise to the level of mismanagement or diversion.[24] Accordingly, the bankruptcy court erred in holding that article 2369.3 did not apply to Hank Ton's management of Abe's. The bankruptcy court must consider on remand whether Hank Ton's liquidation of the life insurance policy and use of its proceeds for Abe's operations was in keeping with his duty under article 2369.3.

## CONCLUSION

For the foregoing reasons, the partition judgment of the bankruptcy court is VACATED, and this matter is REMANDED for further proceedings consistent with this opinion.

New Orleans, Louisiana this 29th day of June, 2020.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

LLC] minority interest to the detriment of the community—which Danya has neither pleaded nor shown—La. C.C. art. 2369.3 affords Danya a right of action for damages against Richard for such mismanagement.").
  [24] 842 So. 2d 1160, 1175 (La. App. 2 Cir. 2003).